**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD LOWNDES and<br>RUTH LOWNDES, h/w<br>    *Plaintiffs*, | :<br>:<br>:<br>:     CIVIL ACTION |
| v. | :     NO. 19-5823 |
| TRAVELERS PROPERTY CASUALTY<br>COMPANY OF AMERICA<br>    *Defendant.* | :<br>:<br>: |

**MEMORANDUM**

**JONES, II    J.**                                                                                                    **April 17, 2020**

## I.     INTRODUCTION

Plaintiffs Edward and Ruth Lowndes initially commenced this insurance claim action against Defendant Travelers Property Casualty Company of America in the Philadelphia County Court of Common Pleas. (Compl. ¶¶ 1-24, ECF No. 1, Ex. 1.) In their Complaint, Plaintiffs assert the following causes of action: (1) breach of an insurance contract; (2) bad faith pursuant to 42 Pa.C.S.A. § 8371; and, (3) loss of consortium. (Compl. ¶¶ 1-24, 25-44, 45-48.) On December 11, 2019, Defendant removed the action to this Court. (Notice Removal, ECF No. 1 4-8.)

Presently before the court is Defendant's Motion to Dismiss the bad faith claim of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (Mot. Dismiss, ECF No. 3-2.). Plaintiffs have filed a Response to Defendant's Motion to Dismiss[1] and for the reasons that follow, Defendant's Motion shall be denied. (Pls.' Resp., ECF No. 6-1.)

---

[1] In their Response, Plaintiffs state that they "are filing a Motion to Remand, arguing that Defendant erroneously removed this instant action and has failed to meet the diversity

1

## II.      BACKGROUND

On October 4, 2016, Edward Lowndes was involved in a head-on collision with Richard Lattanzi. (Compl. ¶¶ 3-5.) As a result of this accident, Mr. Lowndes suffered "serious and permanent bodily injuries." (Compl. ¶ 7.) Mr. Lattanzi's insurance carrier agreed to pay Plaintiffs $250,000—a value which represented Mr. Lattanzi's full policy limit. (Compl. ¶ 6.) However, Plaintiffs allege their damages from this accident exceed Mr. Lattanzi's policy limit. (Compl. ¶ 8.) The Complaint states that Mr. Lowndes has incurred, and will continue to incur, medical expenses, bills, lost wages, and future income. (Compl. ¶ 8.) For these reasons, Plaintiffs filed an underinsured motorist coverage claim with the insuring Defendant. (Compl. ¶¶ 11-12.)

At the time of the accident, Mr. Lowndes was operating a vehicle owned by his employer, Traction Tire, LLC. (Compl. ¶ 9.) By virtue of his employment, Mr. Lowndes was insured under Traction Tire's automobile insurance policy with Defendant. (Compl. ¶ 11.) Traction Tire's insurance policy provided its employees (including Mr. Lowndes) with $1,000,000 in stacked underinsured motorist coverage. (Compl. ¶¶ 11-12.) This policy is the focus of the instant litigation.

During the nearly thirty-two months between January 31, 2017 and September 26, 2019, Plaintiffs allege they provided Defendant with the necessary liquidated and unliquidated damages information from which Defendant could fairly evaluate and make a timely and reasonable offer on the claim. (Compl. ¶¶ 13-14, 16-17.) The Complaint contends that Plaintiffs' estimated damages exceeded $1,000,000. (Compl. ¶ 15.) This value is based on Plaintiffs' unchallenged medical records, narrative reports, and vocational loss and medical prognosis

---

requirements under 28 U.S. Code § 1332." (Pls. Resp. 3.) Plaintiffs then request the court stay the present Motion to Dismiss until it hears Plaintiffs' Motion to Remand. However, the docket is devoid of any such Motion to Remand by Plaintiffs.

reports, which they provided to Defendant. (Compl. ¶ 15.) In addition, Plaintiffs allege that Defendant failed to timely respond or comply with Plaintiffs' counsel's request for Defendant to fairly evaluate the underinsured motorist claim. (Compl. ¶ 16.) In September 2019, Defendant tendered Plaintiffs an offer of $200,000. (Compl. ¶ 15.)

The bad faith claim focuses on Defendant's conduct during the aforementioned thirty-two month time period. (Compl. ¶ 27.) Plaintiff alleges that "Defendant . . . did not have a reasonable basis for delaying and/or denying underinsured motorist benefits or a partial tender of such under the policy until September 2019." (Compl. ¶ 27.) Plaintiffs classify Defendant's refusal to pay the $1,000,000 policy limit benefit as "frivolous and/or unfounded," and assert that Defendant "lacked a legal and factual basis" for its valuation of the claim. (Compl. ¶¶ 19, 28.)

Despite providing Defendant with the liquidated and unliquidated damages information, Plaintiff alleges that Defendant failed to: (i) "properly respond and/or evaluate Plaintiff's underinsured motorist . . . claim;" (ii) offer and/or pay Plaintiffs in good faith; and (iii) inform Plaintiffs of its evaluation of their underinsured motorist claim. (Compl. ¶ 14.) Based upon these allegations, Plaintiffs allege Defendant breached the parties' insurance contract and violated its duty of good faith and fair dealing. (Compl. ¶¶ 13-14.)

### III.   STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotation marks and citation omitted). This

standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll civil complaints must . . . set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

## IV.     DISCUSSION

Defendant argues that Plaintiffs' Complaint should be dismissed because it fails to allege sufficient facts to state a cause of action for bad faith. (Mot. Dismiss 2.) In support of this argument, Defendant contends Plaintiffs did not meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure. (Mot. Dismiss 2-4.) Further, Defendant categorizes Plaintiffs' claims as "bare-bones conclusory allegations." (Mot. Dismiss 4.) This Court disagrees.

Under Pennsylvania law, an insured plaintiff may recover interest, punitive damages, court costs, and attorney's fees against an insurer if the insurer acts in bad faith. 42 Pa. C.S.A. § 8371. Absent a statutory definition of bad faith, courts have defined bad faith as a "'frivolous or unfounded refusal to pay proceeds of a policy[, evidencing] a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.'" *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x. 133, 136 (3d Cir. 2012) (quoting *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994)).

Courts apply a two-part test in assessing bad faith claims, both elements of which must be supported by clear and convincing evidence. *Smith*, 506 F. App'x. at 136. First, the insured must show that the insurer did not have a reasonable basis for denying benefits owed under the policy. *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2015). Second, the insured must demonstrate that the insurer knew or recklessly disregarded the fact that it had no reasonable basis for denying the claim. *Id.* In accordance with the aforementioned clear and convincing evidence standard, the insured must show "'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[] acted in bad faith.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Grp., Inc.*, 56 F.Supp.2d 580, 587 (E.D. Pa. 1999)). The insured must "'describe who, what, where, when, and how the alleged bad faith conduct occurred.'" *Mittman v. Nationwide Affinity Ins. Co.*, No. 16-04658, 2017 U.S. Dist. LEXIS 54220, at *9 (E.D. Pa. Apr. 10, 2017) (quoting *Mattia v. Allstate Ins. Co.*, No. 14-2099, 2014 U.S. Dist. LEXIS 86258, at *12 (E.D. Pa. June 24, 2013)). "A bad faith claim is 'fact specific' and depends upon the insured's conduct in connection with handling and evaluating a specific claim." *Amica v Mut. Ins. Co. v. Das.*, No. 18-1613, 2018 U.S. Dist. LEXIS 206787, at *5-6 (E.D. Pa. Dec. 6, 2018) (citing *Riedi v. GEICO Cas. Co.*, No. 16-6139, 2017 U.S. Dist. LEXIS 54952, at **5-6 (E.D. Pa. Apr. 10, 2017)).

While the insured need not prove that the insurer's conduct was fraudulent, mere negligence or bad judgment on the part of the insurer is not sufficient to sustain a claim. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F.Supp.2d 591, 598 (E.D. Pa. 2010). However, such claims "' must show that the insurer breached its duty of good faith through some motive of self-interest or ill will.'" *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004)).

As set forth above, Mr. Lowndes' accident occurred on October 4, 2016.  (Compl. ¶¶ 3-5.)  Beginning on January 31, 2017, Plaintiffs provided Defendant with the information necessary for Defendant to fairly evaluate said claim. (Compl. ¶ 13.) The information Plaintiffs provided included unchallenged medical records, narrative reports, vocational loss, and medical prognosis reports. (Compl. ¶ 15.) According to Plaintiffs, these records and reports valued Plaintiffs' damages in excess of $1,000,000. (Compl. ¶ 15.) However, despite being in possession of this information, Defendant did not extend any offer to Plaintiffs until September 2019, at which point thirty-two months had elapsed. (Compl. ¶¶ 13, 15.) Plaintiffs also allege numerous requests were made through their counsel for Defendant to fairly evaluate the claim. (Compl. ¶ 16.) However, Defendant failed to respond or comply with these requests in a timely manner. (Compl. ¶ 16.)

Courts within this district have recognized that "[d]elay is a relevant factor in determining whether bad faith has occurred." *Padilla v. State Farm Mut. Auto. Ins. Co.*, 31 F.Supp.3d 671, 676 n.8 (E.D. Pa. 2014); *see also Davis v. Nationwide Mut. Ins. Co.*, 228 F.Supp.3d 386, 389 (E.D. Pa. 2017) (denying a motion to dismiss the insured's bad faith claim in part because the insurer failed to notify the insured about the value of his claim for nearly four years). On its own, however, delay "does not . . . necessarily constitute bad faith." *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 589 (E.D. Pa. 1999); *see also Williams v. Hartford Cas. Ins. Co.*, 83 F.Supp.2d 567, 572 (E.D. Pa. 2000)) (holding that a fifteen-month delay in resolving an insurance claim was not enough by itself to support a claim for bad faith, while simultaneously recognizing that "at some point, a delay may become so great that it can no longer be ascribed to a simple need to investigate a claim, and therefore, may amount to bad faith"). "The primary consideration is the degree to which a defendant insurer *knew* it had no basis to deny the

claimant: if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Williams*, 83 F.Supp.2d at 572 (internal quotation marks and citation omitted).

This Court recognizes the potential negative impact of the thirty-two-month window between the submission of Plaintiffs' claim and Defendant's September offer. However, in light of the aforementioned caselaw, the court's analysis does not stop there. First, this Court is cognizant that there are no facts which suggest Mr. Lowndes was at fault for the accident, or that he was not insured up to the $1,000,000 policy limit. Next, as a result of this accident, Mr. Lowndes alleges to have suffered multiple injuries for which he continues to expend monies for medical care and treatment. (Compl. ¶¶ 7-8.) Beginning on January 31, 2017, Plaintiffs provided Defendant with medical records, narrative reports, vocational loss, and medical prognosis reports which estimated Plaintiffs' liquidated and unliquidated damages to be in excess of Mr. Lowndes' $1,000,000 policy limit. (Compl. ¶ 15.) However, the Complaint asserts Defendant failed to fairly investigate, respond, evaluate, or make a good faith offer to Plaintiff. (Compl. ¶¶ 16-18, 22.) To this point, the Complaint alleges that at no time during the thirty-two months, did Defendant "arrang[e] an independent medical examination or a records review in order to properly evaluat[e] said claim." (Compl. ¶ 34.) Additionally, at no point in its Motion to Dismiss does Defendant contend that this delay was "attributable to the need to investigate further or even to simple negligence." *See Williams*, 83 F.Supp.2d at 572 (citation omitted).

At this stage of the litigation, the court must accept the above factual allegations as true and draw all reasonable inferences in favor of Plaintiffs. *Phillips*, 515 F.3d at 233. Based on these factual allegations, this Court finds that Plaintiffs have stated a plausible bad faith claim that satisfies the required two-part test. *See Wolfe*, 790 F.3d at 498; *see also Dougherty v.*

*Allstate Prop. and Cas. Ins. Co.*, 185 F.Supp.3d 585, 598 (E.D. Pa. 2016) ("'Bad faith conduct . . . includes lack of good faith investigation into facts, and failure to communicate with the claimant.'") (quoting *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. 2009)). In particular, it is wholly plausible that Defendant did not have a reasonable basis for denying Plaintiffs' monies owed based upon the information Plaintiffs provided Defendant. Additionally, viewing the time lapse in conjunction with the lack of an independent medical evaluation by Defendant, it is plausible that Defendant knew of, or recklessly disregarded, its lack of a reasonable basis for denying Plaintiffs' benefits of the policy.

In its Motion to Dismiss, Defendant relies on an array of cases from the Third Circuit, this District, and other courts within this Circuit whereby bad faith claims were dismissed because they relied on "conclusory statements unsupported by facts." *Smith*, 506 F. App'x. at 136. In connection with those cases, Defendant classifies Plaintiffs' claims as conclusory and "at best, a disagreement between Plaintiffs and [Defendant] regarding the value of [Plaintiffs'] . . . claim." (Mot. Dismiss 7-8.) This Court disagrees with Defendant's characterizations.[2]

In *Smith*, a case relied on by Defendant, the Third Circuit affirmed that an insured's bad faith claim was legally insufficient as pled. *Smith*, 506 F. App'x. at 136. In doing so, the court reasoned that the insured's Complaint was "replete with broad and conclusory statements" which lacked factual support.[3] *Id.* The court was particularly influenced by two things. *See id.* at 136-

---

[2] In fact, the court notes that Defendant's brief is devoid of *any* discussion of the relevant allegations set forth in Plaintiffs' Complaint, as they pertain to the standards set forth via case law cited by Defendant. With the exception of one sentence on Page 7 of Defendant's Brief which references the plaintiffs' name, said brief is completely boilerplate and provides the court with absolutely no helpful discussion of the facts involved in this particular case.

[3] The complaint in *Smith* alleged that the insurer: (i) "breached covenants of good faith and fair dealing;" "engaged in unfair settlement negotiations;" (iii) "intentionally misrepresented coverage in the policy;" (iv) "misrepresented facts and its evaluation of [the insured's] claim;"

8

37. First, the insured's Complaint lacked "details describing what was unfair about the negotiations," and second, the Complaint alleged misrepresentations by the insurer "without explaining what those misrepresentations may have been." *Id.* at 136.

Like in *Smith*, the courts in *Kosmalski* and *Pasqualino* dismissed the respective insureds' bad faith claims because the Complaints only offered conclusory allegations unsupported by facts. *See Kosmalski v. Progressive Preferred Ins.*, No. 17-5726, 2018 U.S. Dist. LEXIS 74124, at *4-5 (E.D. Pa. May 2, 2018); *Pasqualino v. State Farm Mut. Auto. Ins. Co.*, No. 15-0077, 2015 U.S. Dist. LEXIS 69318, at *12-13 (E.D. Pa. May 28, 2015). In *Kosmalski*, the court reasoned that the insured "[did] not . . . support [his] conclusory allegations with any facts regarding [the insurer's] communications, investigation, response or offer(s) of payment." *Kosmalski*, 2018 U.S. Dist. LEXIS 74124, at *2. Similarly, the *Pasqualino* court found that the insured's allegations "[did] not provide any factual allegations from which the Court could make a plausible inference that [the insurer] knew or recklessly disregarded its lack of a reasonable basis for denying benefits." *Pasqualino*, 2015 U.S. Dist. LEXIS 69318, at *12. As addressed above, this Court does not find that Plaintiffs' Complaint solely relies on conclusory assertions. In fact, a case relied on by Defendant helps illustrate this point.

The court in *Yohn* granted the insurer's motion to dismiss an insured's bad faith claim because insured's allegations were conclusory. *Yohn v. Nationwide Ins. Co.*, No. 1:13-CV-00024, 2013 U.S. Dist. LEXIS 80703, at *1 (M.D. Pa. May 10, 2013). There, the court explained:

> The complaint consists mostly of conclusory statements that are not supported by factual allegations. For example, Yohn alleges that the defendant intentionally misrepresented coverage in the policy, but he does

---

(v) "failed to properly investigate her UIM claim;" and (vi) "failed to timely respond to inquiries and correspondence." *Id.* at 136.

9

> not allege what misrepresentation the defendant made. Similarly, Yohn alleges that the defendant used abusive and coercive tactics to settle the claim without explaining what those tactics were. *Yohn alleges that the defendant failed to properly consider evidence that he and his counsel supplied and that the defendant failed to employ only reasonable demands for proof of loss, but he does not allege what evidence was supplied that was not considered or what demands for proof of loss the defendant made.* Further, Yohn alleges that the defendant failed to thoroughly investigate his claim in accordance with its own procedures, but he does not allege what those procedures were or how the defendant deviated from them. *Yohn also alleges that the defendant caused an unreasonable delay in resolving the claim without setting forth any dates for any of the actions taken regarding the claim.* Similarly, Yohn alleges that the defendant failed to timely respond to inquiries and correspondence without setting forth anything about those inquiries and correspondence or the defendant's responses.

*Id.* at *13-14 (emphasis added).

In contrast to the insured in *Yohn*, the Complaint before this Court alleges that Plaintiffs provided Defendant with unchallenged medical records, narrative reports, vocational loss, and medical prognosis reports, all which valued Plaintiffs damages in excess of $1,000,000. (Compl. ¶ 15.) Plaintiffs also alleged that Defendant failed to "arrang[e] an independent medical examination or a records review in order to properly evaluat[e] [Mr. Lowndes'] claim." (Compl. ¶ 34.) Additionally, and again contrary to *Yohn*, the Complaint addressed the thirty-two-month lapse between the time this information was provided to Defendant in January of 2017, and the date upon which Defendant made its $200,000: September of 2019.[4] (Compl. ¶¶ 13, 15.) These distinctions provide factual support for a plausible claim of bad faith.

---

[4] The court in *Soldrich* took a similar position to the *Yohn* court with respect to the plaintiff's claim that the defendant had "unreasonably delayed the handling of [p]laintiff's insurance claim." *Soldrich v. State Farm Fire & Cas. Co.*, No. 5:15-cv-01438, 2015 U.S. Dist. LEXIS 159125, at *11 (E.D. Pa. Nov. 24, 2015). In *Soldrich*, the court dismissed a plaintiff's bad faith claim and in doing so it reasoned that "there are no facts alleged in the Compliant that relate to the alleged delay, such as the length of time that passed between the date when [p]laintiff notified [d]efendant of his claims and the date that [d]efendant responded to them." *Id.*

Lastly, Defendant argues that the bad faith claim represents a disagreement between the parties as to the fair value of Plaintiffs' claim. However, under similar factual circumstances, the court in *Davis* stated that "[a]ssuming the truth of these allegations, an unreasonably low offer, or no offer, could be bad faith on the part of [the insurer]." *See Davis*, 228 F.Supp.3d at 390. Much like Defendants' other arguments, this one is premised on the basis that Plaintiffs' Complaint is based on conclusory allegations. Without reiterating the entirety of its position on Defendant's argument, this Court disagrees.

In sum, the court finds that Plaintiffs have pleaded more than conclusory allegations of bad faith. Namely, Plaintiffs' Complaint sufficiently alleges facts "describ[ing] who, what, where, when, and how the alleged bad faith conduct occurred." *Mittman*, 2017 U.S. Dist. LEXIS 54220, at *9. In doing so, sufficient factual matter has been pleaded to show a facially plausible claim of bad faith. *Fowler*, 578 F.3d at 210.

## V.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint shall be denied.

An appropriate Order follows.

BY THE COURT:


/s/ C. Darnell Jones, II    J.